## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

**NICHOLAS DRAKE,**
Elm Meadow Drive
San Antonio, TX 78251

     *Plaintiff*,

**v.**

**TRACE SYSTEMS, INC.,**
*Serve*: C T Corporation System
4701 Cox Road
Suite 285
Glen Allen, VA 23060

     *Defendant*.

**CASE NO. 1:25-cv-984**

**JURY TRIAL DEMANDED**

## NATURE OF CLAIMS

1.    Plaintiff Nicholas Drake ("Plaintiff" or "Mr. Drake") brings this action against Defendant Trace Systems, Inc. ("Defendant" or "Trace") to redress unlawful wage theft, misclassification, breach of contract, and retaliation in violation of federal and Virginia law. Mr. Drake, a highly experienced Senior SATCOM Engineer deployed to Kuwait on a U.S. military communications contract, worked grueling 84-hour weeks in combat-adjacent environments performing technical, manual labor. Despite this, Trace willfully misclassified him as an exempt employee, denied him overtime, failed to pay federally mandated uplifts for overseas deployment, and refused to reimburse substantial travel expenses.

2.    When Mr. Drake reported these unlawful practices—first internally and then through a protected whistleblower complaint to the Defense Information Systems Agency Inspector General—Trace responded with swift and unlawful retaliation. It disabled his

- 1 -

government-issued credentials, locked him out of company systems, severed his access to income, and rendered him unable to work, constructively terminating his employment. As a direct result, Mr. Drake also lost his security clearance, severely hampering his ability to find future employment in the defense industry.

3.    This Complaint seeks to hold Trace accountable for its unlawful conduct and obtain full relief for Mr. Drake's economic losses, emotional harm, and reputational damage. Mr. Drake seeks back pay, front pay, unpaid wages, liquidated damages, compensatory damages, attorneys' fees, litigation costs, and other relief available under the Fair Labor Standards Act, 29 U.S.C. § 203 *et seq.*, the Virginia Wage Payment Act, Va. Code §40.1-29, applicable federal and state whistleblower statutes, and Virginia common law.

## PARTIES

4.    Plaintiff Nicholas Drake ("Plaintiff" or "Mr. Drake") is a U.S. citizen and resident of Elm Meadow Drive San Antonio, TX 78251. At all relevant times, Mr. Drake was employed as a Senior SATCOM Engineer deployed in support of a U.S. government communications contract overseas.

5.    From approximately March 2023 through October 2024, Plaintiff was employed by Defendant Trace Systems, Inc. ("Trace" or "Defendant") as a Senior SATCOM Engineer. Prior to Trace's acquisition of Envistacom, Mr. Drake performed similar duties in the same role with Envistacom, a similar federal contractor, beginning in 2021. Throughout his employment, Plaintiff was deployed to Kuwait and other overseas locations, where he performed typically non-exempt, highly technical, manual fieldwork in support of the U.S. Department of Defense.

6.    Defendant Trace Systems, Inc. is a federal contractor headquartered at 8251 Greensboro Drive, Suite 510, McLean, VA 22102 and registered to conduct business in Virginia.

Trace provides mission-critical communications and cybersecurity services to defense and intelligence agencies and employs over 500 individuals in the United States and abroad.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, including the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; and the federal whistleblower statutes codified at 50 U.S.C. § 3234 and 5 U.S.C. § 2302(b)(8).

8.      This Court also has supplemental jurisdiction over Plaintiff's claims arising under Virginia state law pursuant to 28 U.S.C. § 1367(a), as the state law claims are so related to the federal claims that they form part of the same case or controversy.

9.      Venue is proper in the United States District Court for the Eastern District of Virginia under 28 U.S.C. § 1391(b) because Defendant Trace Systems, Inc. maintains offices, conducts substantial business, and committed the unlawful acts alleged in this Complaint within this judicial district.

10.     Defendant is subject to personal jurisdiction of this Court because it regularly conducts business within the District, maintains corporate operations in this District, and employed Plaintiff in connection with a federal contract originating from this jurisdiction.

## FACTUAL ALLEGATIONS

**Trace's Action Cause Mr. Drake Good Faith Suspicion of Misclassification under the FLSA.**

11.     Mr. Drake has worked in the federal satellite communications industry since 2013 performing the same technical functions across successive roles with defense contractors. He

joined Envistacom in 2021 and transitioned to Trace in April 2023 following Trace's acquisition of Envistacom.

12.     From the time of his transfer until October 2024, Mr. Drake served as a Senior SATCOM Engineer deployed overseas in combat-adjacent environments, where he consistently worked 84-hour weeks. His responsibilities included grueling manual labor, including physically installing, maintaining, and troubleshooting satellite terminals, HVAC systems, and power generators—often while in body armor and in extreme conditions.

13.     The field-based, manual, and technical nature of his duties would typically require Mr. Drake be classified as an exempt employee under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. if the work was performed within the United States.

14.     Mr. Drake did not supervise staff, manage a department, draft policies, or exercise discretion in business operations. His work was hands-on and operational—not executive, administrative, or professional within the meaning of federal exemptions.

15.     Mr. Drake's employment offer letters further indicate an apparent contradiction to the Company's exemption designation. His 2023 offer letter anticipated $119,204.80 in "Extended Work Week" pay layered on top of his base hourly salary. His 2024 letter estimated $81,276.00 in additional compensation for extended hours. Both letters acknowledged a 70- to 84-hour schedule but continued to classify Mr. Drake as exempt.

16.     Trace never applied a time-and-a-half overtime rate, as required by 29 U.S.C. § 207(a)(1).

17.     Mr. Drake's work matched the federal definitions for Electronics Mechanic and Telecommunications Technician, both of which are designated by the GSA non-exempt roles requiring hourly pay and fringe benefits.

18.    Trace's own GSA Schedule outlined these labor categories and reinforced its obligation to classify workers like Mr. Drake under federal contracting standards. The Company's refusal to do so violated its contractual obligations.

19.    Trace's internal policies also acknowledged the inconsistency. In mandatory Deltek timekeeping training, Trace instructed employees to log hours based on physical location—yet refused to pay Mr. Drake location-based uplifts mandated under the Joint Travel Regulations and State Department guidance.

20.    Trace knew its classification was invalid but maintained it to reduce labor costs at the expense of its employees.

### Trace Willfully Underpaid Mr. Drake

21.    Trace's misclassification enabled a broader, deliberate scheme to underpay Mr. Drake. Although he consistently worked 84-hour weeks, his time was coded and compensated as "Regular" at a straight hourly rate of $52.10. No tax-free COLA, hardship, and hazard pay was included.

22.    In contrast, Mr. Drake's May 2022 pay stub—issued while he was still employed by Envistacom—shows that he received appropriate tax-free COLA, hardship, and hazard pay for overseas deployment. Once Trace acquired Envistacom, those uplifts disappeared despite identical job functions and deployment conditions. Trace deliberately stopped paying required uplifts.

23.    Mr. Drake's offer letters guaranteed a COLA allowance of $677.24 semi-monthly, based on a 40-hour work week) for overseas work. Mr. Drake consistently worked 80+ hour weeks, and because COLA is proportionally based on hours worked, Mr. Drake's actual COLA allowance should have been much higher. Additionally, Mr. Drake was entitled to $5,835.00 per 28-day period plus $11.00/day in per diem for Temporary Duty Assignments ("TDY") assignments. These

were not discretionary benefits but mandatory under Trace's own contracts and the Joint Travel Regulations ("JTR"). Yet Trace consistently refused to honor them. During a six-week TDY in Jordan, Mr. Drake incurred over $6,000.00 in unreimbursed costs—including $1,744.00 for a car rental extension and $4,334.00 in lost per diem. Trace never reimbursed him.

24.     Similarly, while deployed to Iraq and Afghanistan, Mr. Drake was entitled to 70% hazard and hardship uplifts. Based on his rate of $52.10/hour, he should have received an additional $1,458.00 per week. Trace never paid these amounts.

25.     Trace's internal communications confirm that these failures were policy—not error. In June 2024, Project Manager Steve Carpenter wrote: "We never did that at EVC either and I see no need to change… None of us who have been there ever had uplifts adjusted for the TDY stay and that won't be changing in the near future." In that same thread, Jerone Johnson ("Mr. Johnson") confirmed he had raised the issue with management and was told: "Bottom line no uplift change from what you have at home station."[1]

26.     Trace's wage disbursement practices also deprived Mr. Drake of direct access to his pay. Pursuant to Kuwait's Wage Protection System, Trace deposited his wages into a Gulf Bank account. When the Company revoked his Kuwaiti residency, Mr. Drake lost access to the account. Trace continued depositing his wages there, resulting in over 9,000.00 in inaccessible earnings.

27.     Mr. Drake spent over $6,000.00 out-of-pocket to regain access, and Trace refused to reimburse him. Worse, Trace withheld $4,164.00 from Mr. Drake's final paycheck, labeling it as Leave Without Pay (LWOP"). Because Mr. Drake is an hourly employee, any unpaid time

---

[1] Ex. A, REF: Uplifts Email.

should have simply resulted in no pay for the unworked hours, not a deduction from wages already earned. Trace never deposited the withheld amount.

**Trace Retaliated Against Mr. Drake for Engaging in Protected Disclosures**

28.     Beginning in April 2024, Mr. Drake raised concerns internally about Trace's misclassification and pay practices. On April 19, he contacted Regional Manager Mr. Johnson about a missing uplift for a recent TDY in Iraq. Mr. Johnson admitted that he too had experienced similar shortfalls. Mr. Drake raised the issue again following his vacation, but Trace failed to take corrective action.

29.     Around the same time, other employees—including Floyd Nelson ("Mr. Nelson")—complained of unpaid hazard and hardship pay. Trace gave Mr. Nelson a limited forward-looking adjustment but refused to reimburse him for the over $30,000.00 in retroactive losses. Mr. Drake, who had accrued even more unpaid compensation, received no adjustments at all.

30.     On October 24, 2024, Mr. Drake raised the issue again during a company-wide "Open Conversation" with COO Kenneth Hilton ("Mr. Hilton"). Crystal Manes ("Ms. Manes") from HR took notes. Mr. Drake outlined his good faith understanding of Trace's violations of federal wage laws and its refusal to pay TDY expenses. The following day, a follow-up meeting with Vice President for HR Dayna Knop ("Ms. Knop") was abruptly canceled and never rescheduled.

31.     After exhausting internal options, on October 23, 2024, Mr. Drake informed Mr. Carpenter and Greg Filak, Vice President of Operations ("Mr. Filak"), that he would be filing a complaint with the DISA Inspector General. On October 24, 2024, he submitted a formal whistleblower complaint.

32.     Within hours of his submission, Trace retaliated. The Company revoked Mr. Drake's Common Access Card ("CAC") access, locking him out of secure facilities and effectively ending his ability to perform his job. Trace also disabled his company email, timekeeping access, and internal messaging—constructively terminating his employment without notice or explanation.

33.     Trace then dispatched Manager Mr. Roddey to Mr. Drake's former residence in Kuwait to physically locate him. Mr. Filak later admitted that he had ordered this surveillance of Mr. Drake. Trace messaged Mr. Drake's colleagues asking for his new location—an invasive and retaliatory tactic. Meanwhile, Mr. Drake's wages continued to be deposited into an inaccessible Kuwaiti account, and his retirement account was shut down without notice.

34.     Less than a day later, on October 25, 2024, Mr. Filak provided notice of Mr. Drake's termination via email, citing insubordination. Other Trace management told Mr. Drake that he hadn't been terminated but instead transferred to a different contract.

35.     Mr. Drake was never told what new contract he was to report to and was terminated on January 15, 2025.

36.     To make matters worse, Trace's retaliatory conduct occurred just weeks before Mr. Drake's federal security clearance expired in December 2024. Because he was no longer employed, he had no opportunity to renew the clearance—rendering him ineligible for most positions in his field and significantly impairing his job prospects.

37.     As a direct result of Defendant's willful misclassification, systemic underpayment, and unlawful retaliation, Plaintiff has suffered—and continues to suffer—the following tangible and intangible harms:

(a)    Loss of unpaid wages, including, deployment-based uplifts, and TDY reimbursements;

(b)    Loss of $4,164.00 in withheld final earnings;

(c)    Out-of-pocket costs exceeding $6,000.00 to recover wages and reactivate a blocked foreign bank account;

(d)    Loss of federal security clearance and resulting loss of access to employment in the defense contracting field;

(e)    Emotional distress, anxiety, and mental anguish stemming from Defendant's retaliatory conduct;

(f)    Damage to Plaintiff's professional reputation and career advancement within the federal contracting industry; and

(g)    Financial instability, housing uncertainty, and loss of healthcare-related protections associated with overseas employment.

## CLAIMS FOR RELIEF

### COUNT I
### Retaliation in Violation of the Fair Labor Standards Act ("FLSA")
### 29 U.S.C. § 201 *et seq.*
(Misclassification and Failure to Pay Overtime)

38.    Plaintiff re-alleges and incorporates by reference paragraphs 11 through 37 as fully set forth herein.

39.    The Fair Labor Standards Act prohibits retaliation or discrimination against an employee who has failed a complaint under the Act. *See* 29 U.S.C. § 215(a)(3).

40.    Plaintiff made repeated internal reports to supervisors regarding Trace's suspected unlawful failure to pay overtime, denial of required uplifts and TDY reimbursements, and misclassification of federal contract employees.

41.     When these internal efforts were ignored, Plaintiff submitted a formal complaint to the Defense Information Systems Agency Inspector General on October 24, 2024.

42.     Within hours of that external report, Defendant revoked Plaintiff's CAC, disabled his email and timekeeping systems, and sent personnel to physically locate his whereabouts. These adverse actions rendered Plaintiff unable to work. As a result of Defendant's retaliation in willful violation of the FLSA, Plaintiff is entitled to reinstatement, payment of lost wages with an additional equal amount as liquidated damages. unpaid overtime wages, liquidated damages, and a three-year statute of limitations under 29 U.S.C. § 255(a).

## COUNT II
### Violation of 50 U.S.C. § 3234 and 5 U.S.C. § 2302(b)(8)(A)
(Federal Whistleblower Retaliation)

43.     Plaintiff re-alleges and incorporates by reference paragraphs 11 through 37 as fully set forth herein.

44.     Under 50 U.S.C. § 3234 and 5 U.S.C. § 2302(b)(8)(A), it is unlawful for a federal contractor to take or fail to take any personnel action as a reprisal against an employee who discloses, to a supervisor or government authority, information that the employee reasonably believes evidences a violation of law, gross mismanagement, gross waste of funds, abuse of authority, or a substantial and specific danger to public safety.

45.     These statutes apply specifically to employees of contractors, subcontractors, grantees, or personal services contractors working under government contracts, including defense and intelligence projects.

46.     Plaintiff was employed by Trace on a federal defense contract providing SATCOM and technical engineering support in Kuwait and other overseas deployment locations.

47.     In that capacity, Plaintiff became aware of what he believed in good faith were unlawful practices including misclassification of non-exempt employees, failure to pay required uplifts, and potential overbilling of the federal government for labor not properly compensated under applicable wage laws.

48.     Plaintiff raised these concerns internally over several months and, when no corrective action was taken, submitted a formal whistleblower complaint to the Defense Information Systems Agency Inspector General on October 24, 2024. That complaint disclosed suspected systemic wage violations, possible fraud on the government, and breach of labor obligations under federal contracting regulations.

49.     Within hours of that protected disclosure, Defendant took adverse personnel actions that rendered Plaintiff unable to work. These included revoking his CAC, disabling his email and internal access systems, cutting off communications, and sending personnel to his former residence to locate him.

50.     Defendant attempted termination for "insubordination," but did not actually terminate Plaintiff for three months, resulting in further loss of income.

51.     Federal whistleblower protection statutes define "personnel action" broadly to include decisions concerning employment status, pay, benefits, reassignment, suspension, termination, and any significant change in working conditions. *See* 50 U.S.C. § 3234(c)(1).

52.     Plaintiff's removal from the project and severance from all employment tools was not based on performance or conduct. It was a direct response to his protected whistleblower disclosure and was implemented without due process, cause, or warning.

53.     Defendant further harmed Plaintiff by failing to notify him that his federal security clearance was set to expire in December 2024. Because Trace severed his employment and

removed him from access in October 2024, Plaintiff had no opportunity to renew his clearance. As a result, he lost eligibility for the vast majority of positions in his field, which require active clearance and recent access.

54.     Defendant's retaliatory conduct violated federal whistleblower protection laws and has caused lasting harm to Plaintiff's career, income, and professional reputation.

55.     As a direct and proximate result of Defendant's unlawful retaliation in violation of 50 U.S.C. § 3234 and 5 U.S.C. § 2302(b)(8)(A), Plaintiff has suffered and will continue to suffer the following damages:

(a)     Loss of income and benefits from the date of constructive discharge to the present, and continuing into the future;

(b)     Loss of federal security clearance and resulting loss of access to employment in the defense and intelligence contracting sectors;

(c)     Lost job opportunities, including multiple applications rejected due to Plaintiff's inactive clearance and unexplained departure from Trace;

(d)     Reputational harm in the federal contracting community due to Trace's abrupt and undocumented removal of Plaintiff from the project;

(e)     Emotional distress, anxiety, and mental anguish caused by Defendant's retaliatory conduct and the long-term damage to Plaintiff's career; and

(f)     Financial hardship, including housing and healthcare insecurity, as a result of Trace's retaliation and failure to pay earned wages.

**COUNT III**
**Violation of the Virginia Whistleblower Protection Law**
**Va. Code § 40.1-27.3(A)(1)**
(Retaliation for Protected Disclosures)

56.     Plaintiff re-alleges and incorporates by reference paragraphs 11 through 37 as fully set forth herein.

57.     Under the Virginia Whistleblower Protection Law, Va. Code § 40.1-27.3(A)(1), it is unlawful for an employer to retaliate against an employee who, in good faith, reports a violation of federal or state law to a supervisor or governmental body.

58.     Plaintiff made repeated internal reports to supervisors regarding Trace's suspected unlawful failure to pay overtime, denial of required uplifts and TDY reimbursements, and misclassification of federal contract employees.

59.     When these internal efforts were ignored, Plaintiff submitted a formal complaint to the Defense Information Systems Agency Inspector General on October 24, 2024.

60.     Within hours of that external report, Defendant revoked Plaintiff's CAC, disabled his email and timekeeping systems, and sent personnel to physically locate his whereabouts. These adverse actions rendered Plaintiff unable to work.

61.     Defendant's conduct amounts to classic retaliation under Va. Code § 40.1-27.3(A)(1). The close temporal proximity between Plaintiff's protected report and Defendant's adverse actions creates a strong inference of retaliatory motive, as confirmed by contemporaneous messages and internal communications.

62.     In the months following his constructive discharge, Plaintiff struggled to secure new employment due to Trace's timing and conduct. Defendant's actions effectively timed Plaintiff's removal from the federal workforce with the expiration of his security clearance, eliminating his opportunity to renew it and significantly diminishing his eligibility for future roles in defense contracting.

63.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and will continue to suffer the following damages:

(a)     Loss of back pay and benefits following his removal from Trace;

- 13 -

(b)    Loss of federal security clearance due to Trace's constructive discharge occurring immediately prior to its expiration, resulting in an inability to pursue comparable employment in the defense contracting industry;

(c)    Emotional distress, anxiety, and mental anguish resulting from the retaliatory discharge and its professional consequences;

(d)    Damage to Plaintiff's professional reputation and loss of standing in the federal contracting community;

(e)    Financial instability, including difficulty paying for housing and basic necessities following his sudden loss of income; and

(f)    Loss of career progression and advancement opportunities in the SATCOM and DoD support fields.

**COUNT IV**
**Violation of the Virginia Wage Payment Act**
**Va. Code §40.1-29(A)**

64.    Plaintiff re-alleges and incorporates by reference paragraphs 11 through 37 as fully set forth herein.

65.    Under Virginia law, all employers operating in Virgina shall pay non-executive, salaried employees at least once a month, and hourly employees at least once every two weeks or twice a month. *See* Va. Code §40.1-29(A). The employer must pay a terminated employee all wages or salaries due to him on or before the next scheduled pay date. Id.

66.    Any employer who fails to make payments in accordance with subsection (A) is liable to the employee for payment of all wages due, an equal amount as liquidated damages, interest accruing from the date the wages were due, and reasonable attorney fees and costs. *See* Va. Code §40.1-29(G).

67.    Although Defendant terminated Mr. Drake's employment on January15, 2024 – and arguably did so constructively on October 25, 2024 – Defendant has failed to pay Mr. Drake his final wages.

68.     Defendant knowingly failed to provide the deployment-based uplifts it agreed to in Plaintiff's employment contract.

69.     Defendant also knowingly failed to pay the Health & Welfare benefits and location-based uplifts, including hardship, hazard, and COLA pay it agreed to in Plaintiff's employment contract.

70.     Plaintiff's contracts explicitly referenced these entitlements. Nevertheless, Defendant failed to pay them for the entire duration of Plaintiff's employment.

71.     Defendant's failure perform under the employment contract was not a clerical error—it was a knowing and intentional violation designed to reduce labor costs on a federal contract.

72.     As a direct and proximate result of Defendant's violations of the Virginia Wage Payment Act, Plaintiff has suffered and will continue to suffer the following damages:

(a)     Loss of overseas uplifts totaling approximately $42,858.00, for Plaintiff's 84-hour workweeks and extended overseas deployments in high-risk zones such as Iraq;

(b)     Unpaid per diem and TDY reimbursements for multiple overseas deployments, including a six-week trip to Jordan where Plaintiff incurred over $6,000.00 in unreimbursed expenses; and

(c)     Loss of $4,164.00 in unpaid final wages.

73.     Under the VWPA, Defendants are required to pay Dr. Coca in damages no less than $106,044.00, interest thereon, and reasonable costs and attorneys' fees.

**COUNT V**
**Violation of the Virginia Wage Payment Act**
**Va. Code §40.1-29(C)**

74.    Plaintiff re-alleges and incorporates by reference paragraphs 11 through 37 as fully set forth herein.

75.    The VWPA states that other than those withholdings required by law, no employer shall withhold any part of the wages or salaries of any employee without that employees written and signed authorization. Va. Code §40.1-29(C).

76.    When an employee fails to pay wages to an employee as required, that employee may bring an action for such failure. In those instances, the court shall award wages owed, an additional equal amount as liquidated damages, prejudgment interest, and reasonable attorney fees and costs. For knowing failures to pay wages, the employer must pay the employee treble damages. *See* Va. Code §40.1-29(J).

77.    Although Defendant terminated Mr. Drake's employment on January15, 2024 – and arguably did so constructively on October 25, 2024 – Defendant has failed to pay Mr. Drake his final wages.

78.    Defendant knowingly failed to provide the deployment-based uplifts it agreed to in Plaintiff's employment contract.

79.    Defendant also knowingly failed to pay the Health & Welfare benefits and location-based uplifts, including hardship, hazard, and COLA pay it agreed to in Plaintiff's employment contract.

80.    Plaintiff's contracts explicitly referenced these entitlements. Nevertheless, Defendant failed to pay them for the entire duration of Plaintiff's employment.

81.    Defendant's failure perform under the employment contract was not a clerical error—it was a knowing and intentional violation designed to reduce labor costs on a federal contract.

82. As a direct and proximate result of Defendant's violations of the Virginia Wage Payment Act, Plaintiff has suffered and will continue to suffer the following damages:

(a) Loss of overseas uplifts totaling approximately $42,858.00, for Plaintiff's 84-hour workweeks and extended overseas deployments in high-risk zones such as Iraq;

(b) Unpaid per diem and TDY reimbursements for multiple overseas deployments, including a six-week trip to Jordan where Plaintiff incurred over $6,000.00 in unreimbursed expenses; and

(c) Loss of $4,164.00 in unpaid final wages.

83. Under the VWPA, Defendants are required to pay Dr. Coca in damages no less than $159,066.00, interest thereon, and reasonable costs and attorneys' fees.

## COUNT VI
## Breach of Contract

84. Plaintiff re-alleges and incorporates by reference paragraphs 11 through 37 as fully set forth herein.

85. Under Virginia law, a breach of contract occurs when (1) a legally enforceable obligation exists between the parties, (2) the defendant fails to perform that obligation, and (3) the plaintiff suffers damages as a result. Evans v. Truist Bank, 77 Va. App. 140, 148 (2023); Clevert v. Jeff W. Soden, Inc., 241 Va. 108, 111 (1991).

86. Plaintiff and Defendant Trace entered into multiple written employment agreements that established specific terms for Plaintiff's compensation, including hourly base pay, deployment-based uplifts, and reimbursement for Temporary Duty Assignments ("TDYs") in accordance with the Joint Travel Regulations ("JTR") and U.S. Department of State guidance.

87.    Defendant agreed in writing to pay Plaintiff $52.10 per hour and to provide an additional $677.24 based on a standard 40-hour work week in hazard, hardship, and cost-of-living allowance (COLA) while deployed overseas. These uplifts, however, should have been prorated to reflect Plaintiff's consistent 80+ hour work weeks and extended overseas deployment.

88.    Defendant also agreed to provide TDY uplifts of $5,835.00 per 28-day assignment and daily per diem while on temporary assignments in combat-adjacent areas.

89.    Despite these clear contractual promises, Trace repeatedly and materially breached its obligations by:

(a)    Failing to pay Plaintiff the required deployment-based uplifts, even during extended assignments in higher-risk areas;

(b)    Refusing to reimburse Plaintiff for TDY-related expenses, including a six-week assignment to Jordan where Plaintiff incurred over $6,000.00 in unreimbursed costs;

(c)    Withholding $4,164 from Plaintiff's final paycheck without justification or explanation;

(d)    Continuing to deposit wages into an inaccessible Kuwaiti bank account after revoking Plaintiff's sponsorship, which resulted in over $9,000.00 in earned wages becoming inaccessible and forced Plaintiff to spend over $6,000.00 to regain access.

90.    Defendant's conduct not only violated the express terms of Plaintiff's employment agreements but also breached the implied covenant of good faith and fair dealing inherent in every Virginia contract. Hurt v. Caton, 83 Va. App. 745, 754 (2025).

91.    Plaintiff performed all obligations under the contract faithfully, including consistently working 84-hour weeks in high-risk environments, often exceeding the scope of his assignments. In contrast, Defendant failed to perform its basic obligations to provide agreed-upon compensation and reimbursements.

92.    As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered and continues to suffer the following damages:

(e)     Unpaid deployment-based uplifts for the duration of his overseas assignment;

(f)     Over $6,000.00 in unreimbursed TDY expenses;

(g)     $4,164.00 in withheld final earnings;

(h)     Over $6,000.00 in out-of-pocket costs incurred to regain banking access in Kuwait;

(i)     Emotional distress and financial hardship caused by Defendant's repeated breaches; and

(j)     Any other damages available under Virginia law for breach of contract.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant Trace Systems, Inc., and award the following relief:

a)     A declaration that Defendant's actions violated the retaliation provisions of the Fair Labor Standards Act, the Virginia Whistleblower Protection Law, 50 U.S.C. § 3234, 5 U.S.C. § 2302(b)(8)(A), and Virginia common law;

b)     Back pay, front pay, and all other compensatory damages, including for lost earnings and lost benefits;

c)     Compensatory damages for:

1.     Loss of approximately $42,858.00 in unpaid weekly overseas uplifts;

2.     Loss of approximately $6,078.00 in unreimbursed TDY expenses;

3.     $4,164 in withheld final paycheck earnings;

4.     Over $6,000.00 in out-of-pocket costs to regain banking access in Kuwait;

5.     Financial instability and loss of housing, healthcare coverage, and economic security;

      6.      Loss of federal security clearance and inability to obtain comparable defense-sector employment;

      7.      Reputational damage in the federal contracting industry;

      8.      Emotional distress, mental anguish, and anxiety stemming from Defendant's retaliation and breach;

d)      Liquidated damages under the Virginia Wage Payment Act pursuant to Va. Code §40.1-29(A);

e)      Liquidated damages under the Virginia Wage Payment Act equal to triple the amount of wages due pursuant to Va. Code §40.1-29(C);

f)      Punitive damages to deter future willful and retaliatory misconduct;

g)      Reinstatement to the position Plaintiff would have held but for Defendant's retaliation—or, in the alternative, front pay and lost benefits for continuing harm;

h)      Pre-judgment and post-judgment interest as allowed by law;

i)      Reasonable attorneys' fees and costs under applicable federal and state statutes; and

j)      Any other relief that the Court deems just and appropriate.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

*/s/ Francisco Mundaca*
Francisco E. Mundaca, Esq.
The Mundaca Law Firm, LLC
1997 Annapolis Exchange Pkwy
Suite 300
Annapolis, Maryland 21401
Phone: (202) 474-8500
Fax: (240) 233-8626

Email: fmundaca@mundacalaw.com

*Counsel for Nicolas Drake*